# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA – MIAMI DIVISION

CASE NO. 19-16899-RAM
CHAPTER 7

IN RE:

**RUBEN R. TORRES,**
　　　　　Debtor(s)
　　　　　　　　　　　　　　　　　　　/

## JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**Any interested party who fails to file and serve a written response to this Motion within 14 days after the date of service stated in this motion shall, pursuant to Local Rule 4001-1 (C), be deemed to have consented to the entry of an order granting relief requested in the motion.**

**COMES NOW,** JPMorgan Chase Bank, National Association, its Successors and/or Assigns ("Secured Creditor"), by and through its undersigned counsel, as and for its *Motion for Relief from the Automatic Stay*, states as follows:

1.　　The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a) and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the laws of the United States of America.

2.　　The Debtor(s) listed above (the "Debtor") filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on May 24, 2019.

3.　　The Debtor obtained a loan in the amount of $150,000.00 which was evidenced by a Home Equity Line of Credit Agreement and Disclosure dated January 20, 2007 (the "Note"). See "Exhibit A" attached hereto.

4.　　As security for payment of the Note, the Debtor and non-filing co-mortgagor, Margarita Torres, executed a mortgage dated January 20, 2007 (the "Mortgage"), which granted



JPMorgan Chase Bank, N.A. a junior lien on the real property located at **4920 SW 122 Ave,**

**Miami, Florida 33175** (the "Property"), and legally described as:

**THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF FLORIDA, COUNTY OF MIAMI-DADE, CITY OF MIAMI, AND IS DESCRIBED AS FOLLOWS:**

**NORTH 165 FEET OF LOT 218, BIRD ROAD FARMSITES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 46, PAGE 3, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

5.      The Mortgage was recorded on February 2, 2007 in Book No. 25332, Page 3122 of the Public Records of Miami-Dade County, Florida.  See "Exhibit B" attached hereto.

6.      The Debtor has failed to remit payment to Secured Creditor since the installment due on March 6, 2019. See "Exhibit C" attached hereto.

7.      As per the Indebtedness Worksheet attached hereto, Secured Creditor is owed under the Note and Mortgage the pre-petition amount of $138,722.88 and the post-petition amount of $1,304.69. See "Exhibit D" attached hereto.

8.      The post-petition payment address is: JPMorgan Chase Bank, N.A., Mail Code: OH4-7164, P.O. Box 24785, Columbus, OH 43224.

9.      Upon information and belief, the Property has not been claimed exempt and the Trustee has not abandoned the Property.

10.     According to the Miami-Dade Property Appraiser, the estimated market value of the Property is $630,223.00. See Exhibit "E" attached hereto.

11.     According to the Debtor's Schedules, there are first and second mortgages on the Property that are owed the aggregate sum of $878,779.65.  Thus, there is no equity in the Property for the benefit of unsecured creditors of the estate.

12. Secured Creditor maintains that cause exists pursuant to 11 U.S.C. § 362(d)(1) and 11 U.S.C. § 362(d)(2) for the automatic stay be lifted to allow Secured Creditor to pursue in *rem* remedies given that its interests are not being adequately protected due to the failure of the Debtor to make payments prior to the filing of the instant bankruptcy petition and that there is no equity in the Property for the benefit of unsecured creditors of the estate.

13. Furthermore, Secured Creditor's security interest in the Property is being significantly jeopardized by the Debtor's failure to make said payments while Secured Creditor is prohibited from pursuing lawful remedies to protect said security interest.

14. Secured Creditor respectfully requests the Court waives the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3), so the Secured Creditor can pursue its in *rem* remedies without further delay.

15. Pursuant to 11 U.S.C. § 362(e), Secured Creditor hereby requests that in the event a hearing is necessary that one be held within thirty (30) days.

16. Secured Creditor moves the Court for an Order terminating the pending automatic stay to allow Secured Creditor to send to any party or parties protected by the automatic stay any and all notices required by applicable state and/or federal law or regulation. Secured Creditor further moves the Court to terminate the automatic stay to allow Secured Creditor to take such actions with respect to the Property as are provided for under applicable non-bankruptcy law, including but not limited to, informing Debtor of any loan modification, short sale, or other loss mitigation options.

17. Pursuant to Local Rule 9072-1, a Proposed Order accompanies this Motion. See Exhibit "F" attached hereto.

**WHEREFORE**, Secured Creditor respectfully requests that the automatic stay be lifted so that it may pursue in *rem* remedies to protect its security interests in the Debtor(s)' property outside of the bankruptcy forum, that the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) be waived that in the event a hearing is necessary one be held within thirty (30) days, and for such other relief as the Court may deem just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1 (A).

**I HEREBY CERTIFY** that a true and correct copy of the Motion for Relief from Stay was delivered to the addressees on the attached mailing list by First Class U. S. Mail postage pre-paid and/or by Electronic Filing this _____27th_____ day of ___June___, 2019.

Respectfully Submitted,

**Kahane & Associates, P.A.**
8201 Peters Road, Suite 3000
Plantation, Florida 33324
Telephone: (954) 382-3486
Telefacsimile: (954) 382-5380

By: _____
☐ Mary G. Granger , Esq., Fla. Bar No.: 146870
☐ Gregg S. Ahrens, Esq., Fla. Bar No.: 352837
☒ Tari Foreman, Esq., Fla. Bar No.: 58606

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically

filed and/or mailed to all parties listed below this _____27th_____ day of _____June_____,

2019.

Ruben R Torres
12040 SW 51 St
Miami, Florida 33175

Michael A. Frank, Esq.
Attorney for Debtor(s)
10 NW LeJeune Rd #620
Miami, FL 33126

Joel Tabas. Trustee
25 SE 2nd Avenue
Suite 248
Miami, FL 33131

*U.S. Trustee*
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL  33130

Respectfully Submitted,

**Kahane & Associates, P.A.**
8201 Peters Road, Suite 3000
Plantation, Florida 33324
Telephone: (954) 382-3486
Telefacsimile: (954) 382-5380

By: _____
☐ Marc G. Granger , Esq., Fla. Bar No.: 146870
☐ Gregg S. Ahrens, Esq., Fla. Bar No.: 352837
☑ Taji Foreman, Esq., Fla. Bar No.: 58606

*STATE OF FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT REQUIRED BY LAW ARE AFFIXED TO THE MORTGAGE SECURING THIS NOTE AND CANCELLED PURSUANT TO LAW*

# JPMorgan Chase Bank, N.A.
# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

This is the Agreement (the "Agreement") governing your Home Equity Line of Credit ("Credit Account") with JPMorgan Chase Bank, N.A.    . Read this Agreement carefully so that you know how your Credit Account works. As you read this Agreement remember that the terms "we," "us," and "our" refer to JPMorgan Chase Bank, N.A. and to any other creditor to whom this Agreement is assigned. "You," "your," and "yours" refer to each person who signs this Agreement or has authority to use it. "Mortgage" means the mortgage, deed of trust or deed to secure debt you are giving us on your house or condominium. Your account, any amount you owe, and our Mortgage on your home may be sold or transferred to another creditor at anytime. If this happens, this Agreement and the Mortgage will remain in effect.

## 1.    WHAT IS YOUR HOME EQUITY LINE OF CREDIT?

It is a credit arrangement in which we make loans to you by advancing funds ("Advances") from your Credit Account at your direction, allowing you to repay such Advances and take additional Advances. You promise and agree to repay these Advances, any interest which accrues on them, and all other charges for which you are responsible under the terms of this Agreement.

## 2.    USING YOUR CREDIT ACCOUNT/MINIMUM INITIAL ADVANCE.

You may request Advances from your Credit Account by writing a Home Equity Line of Credit Check ("Draw Check"). You may also obtain advances at the closing by completing a loan request form or other form of authorization that we may require. If available in your state, you may also obtain Advances using the credit card access device to your Credit Account ("Credit Card"), and by using your Credit Card as an ATM card access device to your Credit Account ("ATM Card"). You may also request Advances at any of our authorized locations. You may take Advances for a period of 120 Monthly Statement Periods after the date your Credit Account is opened ("Advance Period"). After such Advance Period, unless extended, you may not take further advances. Your principal balance will then be fixed and you will be required to repay it and any interest and other charges which accrue over the next 240 Monthly Statement Periods ("Repayment Period").

If your Credit Limit, as described in Section 5 of this Agreement, is between $500,001 and $750,000 and you are not being asked to pay any Closing Costs as described in Section 12 of this Agreement, then you must take a minimum initial Advance on your Credit Account in an amount equal to or greater than $100,000. If your Credit Limit is between $750,001 and $1,000,000 and you are not being asked to pay any Closing Costs as described in Section 12 of this Agreement, then you must take a minimum initial Advance on your Credit Account in an amount equal to or greater than $200,000.

A Monthly Statement Period is defined as successive intervals of approximately one month beginning on the date your Credit Account is opened and recurring regularly until your Credit Account is finally closed. Monthly Statement Periods occur regardless of whether there is a balance or any activity in your Credit Account or whether we have sent you a statement for the period. Your first Monthly Statement Period may be shorter than a month depending on when your Credit Account is opened.

## 3.    ACCESS DEVICE LIMITATIONS AND RESTRICTIONS.

a)    Lost or Stolen Access Device.    You agree to notify us promptly if any of your Draw Checks, Credit Card ATM Card is lost or stolen. The quickest way to notify us is to call us at (800)-836-5656. You also agree to cooperate with us or any law enforcement agency in any effort to investigate the circumstances surrounding the incident and to minimize potential losses to you or us stemming from the unauthorized use of your Draw Checks, Credit Card or ATM Card. You agree to keep your Draw Checks, Credit Card and ATM Card safe from loss, theft and unauthorized use.

b)    Draw Checks.    You may present Draw Checks to other parties in payment of goods and services. You may write a Draw Check in the exact amount you desire as long as it is in a minimum amount of $250. We may refuse to honor requests for advances below the minimum amount. When you use the Draw Checks, you agree to waive any right you may have to notice of dishonor, presentment, provisional or final settlement within a given time or any other related right. We may dishonor any Draw Check presented to us if you are in default under this Agreement.

c)    Credit Card. You may request Advances by using your Credit Card for cash transactions and in payment of goods and services. The maximum amount that you may request in any transaction (each day) is the lesser of an amount that would cause you to exceed the amount of your Credit Limit or $99,999.99. There may be occasions when this amount is further limited, authentication of your identity is required, or we may decline the transaction for security purposes. You agree that you will not request Advances for any transaction that involves Internet gambling. We reserve the right to refuse a transaction that we reasonably believe involves Internet gambling. We may dishonor any Credit Card transaction if you are in default under this Agreement.

d)    ATM Card. Requests for Advances using your ATM Card are subject to the limitations and fees of the owner of the ATM. We may dishonor any ATM transaction if you are in default under this Agreement.

e)    Requests in Person. You may also request advances at any of our authorized locations or at the closing by completing a loan request form or other form of authorization that we may require. If you take Advances at closing by signing a loan request or other form of authorization, we will disburse the amount to you promptly but no earlier than the end of any applicable period during which you could exercise a right to rescind.



4.    **LIABILITY FOR UNAUTHORIZED USE OF YOUR CREDIT CARD.**
You may be liable for the unauthorized use of your Credit Card that accesses your Credit Account. You will not be liable for unauthorized use that occurs after you notify us by telephone at (800)-836-5656, or in writing at JPMorgan Chase Bank, N.A. , P.O. Box 901008, Fort Worth, Texas 76101-2008, of the loss, theft, or possible unauthorized use. Regardless, your liability for unauthorized use of your Credit Card will not exceed $50.00.

If you use a Credit Card or ATM Card that deducts funds from a checking account or another consumer deposit account, but that you have also established to borrow from this Credit Account, Electronic Fund Transfer Act and Regulation E provisions apply, as well Regulation Z provisions adopted under the Truth-in-Lending Act. If so, you might be liable for up to $50.00 under Regulation Z. You might also be liable for a different or an unlimited amount under Regulation E, or a lesser amount if state law applies. Please read your Electronic Fund Transfer Act disclosure carefully.

5.    **CREDIT LIMIT.**
We have assigned a Credit Limit of $ **150,000.00**   on your Credit Account. You may not request an Advance that would cause your unpaid balance to exceed your Credit Limit. We are not required to pay any item which would cause you to exceed the amount of your Credit Limit. If we do make the Advance, it does not mean your Credit Limit has been raised. We may require you to repay the amount over your Credit Limit at once. If you exceed your Credit Limit, you agree to pay a fee of $25 for each advance in excess of your Credit Limit.

6.   · **PROMISE TO PAY.**
You promise to repay to us in U.S. Dollars all Advances charged to your Credit Account, plus finance charges and all other amounts due under this Agreement or the Mortgage. To avoid being in default, you must pay us at least the minimum payment (described below) by the "Payment Due Date" shown on each billing statement we will send to you. In any event, you promise to pay the balance of your Credit Account at the termination of this Agreement.

7.    **MINIMUM PAYMENT.**
Each billing statement we send you will reflect a minimum monthly payment amount that you must pay.  During the Advance Period or any extension thereof, your minimum monthly payments will be the amount of finance charge accrued plus any fees and any amounts past due. After the Advance Period and during the Repayment Period, your minimum monthly payments will be (a) the unpaid principal balance divided by the remaining number of scheduled payments, plus (b) the amount of finance charge accrued plus any fees and any amounts past due. If you have failed to pay real property taxes, assessments, ground rents (if any) or hazard insurance when due, we may require you to make monthly payments to us for all amounts necessary for taxes, assessments, ground rents (if any), or hazard insurance on the Property, as further described in Section 11 of this Agreement and in the Mortgage or we may charge such amounts to your Credit Account as Advances.


[ INTENTIONALLY LEFT BLANK ]

## 8.    FINANCE CHARGES.

FINANCE CHARGES begin to accrue on the day an Advance is charged to your Credit Account and continue until the outstanding balance on such Advance is paid in full.  FINANCE CHARGES on your Credit Account will be determined by applying a daily periodic rate to the daily balance (as described below) of your Credit Account, an amount that will include current transactions.  To calculate the daily balance, we take the beginning principal balance of your Credit Account each day, add any new Advances, and subtract any payments or credits applied to this principal balance.  This gives us the daily balance.  We then apply the applicable daily periodic rate to each daily balance and add up the results of this daily interest computation for each day of the Monthly Statement Period.  This total is the periodic FINANCE CHARGE for the Monthly Statement Period.

The daily periodic rate and its corresponding ANNUAL PERCENTAGE RATE are variable rates based on changes in the Prime Rate.  "Prime Rate" means the prime rate as published in the "Money Rates" table in The Wall Street Journal on each publication date.  The daily periodic rate and its corresponding ANNUAL PERCENTAGE RATE may increase or decrease on the first calendar day following a change in the Prime Rate.  We will use the highest Prime Rate if more than one is published.  The Prime Rate is merely a pricing index.  It is not intended, and you should not consider it, to represent the lowest or the best interest rate that we, our affiliated organizations or any other financial institution charge to any borrowers.  If the Prime Rate becomes unavailable during the term of this Agreement, we may designate a substitute index upon notice to you.  An increase in the ANNUAL PERCENTAGE RATE and the daily periodic rate will result in a higher FINANCE CHARGE and higher minimum payments, while a decrease in those rates will result in a lower FINANCE CHARGE and lower minimum payments, assuming the same principal balance and number of days in the Monthly Statement Period.

If the Prime Rate changes, the daily periodic rate will be increased or decreased on the first calendar day following a change in the Prime Rate.  If you have a special introductory rate, your ANNUAL PERCENTAGE RATE may increase when the special introductory rate ends even if the Prime Rate does not.  Except for any period in which a special introductory rate is in effect, we will determine your daily periodic rate by adding .750 percentage points to the Prime Rate and dividing the result by 365 (366 in leap years).  We refer to this addition as the "Standard Rate Margin".

On the day we prepared this document, the Prime Rate was 8.250%, and therefore the initial daily periodic rate ("Initial Rate") and corresponding ANNUAL PERCENTAGE RATE on your Credit Account are estimated below.  Your Initial Rate and corresponding ANNUAL PERCENTAGE RATE will be based on the value of the Prime Rate in effect on your closing date.

The estimated Initial Rate is .02465% (corresponding ANNUAL PERCENTAGE RATE: 9.000%).  The ANNUAL PERCENTAGE RATE does not include costs other than interest.

At no time will your ANNUAL PERCENTAGE RATE ever exceed 21%.  Other than this cap there are no limits on the amount by which your ANNUAL PERCENTAGE RATE can change over the life of your Credit Account or on any individual date on which your ANNUAL PERCENTAGE RATE changes.

9.    FIXED RATE CHANGE OPTION.
You may change the variable rate to a fixed rate as described below.
a)    Your ANNUAL PERCENTAGE RATE May increase. Your ANNUAL PERCENTAGE RATE may increase you change to a fixed rate.

b)    General Rate Change Rules. You may change to a fixed rate with our written permission at any time during the Draw Period. You may change the repayment schedule for the entire outstanding balance on the Credit Account or any portion of it, but not less than $1,000.00, for a term up to the lesser of 30 years or the remaining originally scheduled term of your Credit Account (a "Lock"). Therefore, you can take a Lock of up to 30 years only if you obtain a lock on the date you opened this Credit Account. You may have up to five Locks open at any time but you cannot increase the amount of a Lock once we establish it. Your Lock will not be subject to the "Using Your Credit Account" (Section 2) and "Minimum Payment" (Section 7) sections of this Agreement. Instead, when we establish each Lock, we will calculate the required monthly payment to fully pay-off that Lock over the term of the Lock at the fixed rate applicable to that Lock. Therefore, your minimum payment that you owe each month will be your payment for each Lock plus any amounts past due on each Lock, plus the minimum payment amount for your Credit Account which has not been locked (the "Credit Line"), calculated as set forth in the "Minimum Payment" section (Section 7) of this Agreement. The outstanding balance on each Lock will accrue interest at a fixed rate as established in the "Rate Determination" section (Section 9(d)), and will pay-off in full over the period we establish for your Lock.

c)    Additional Principal Payments on Lock(s). Additional principal payments for a Lock may be made at any time but will not change your responsibility to pay future Lock payments as long as any amount is still owing on the Lock unless we agree otherwise in writing. Any principal payment made on any Lock will be available on the Credit Line for you to borrow against upon our posting of that payment. If your outstanding balance includes one or more Locks as well as a balance on your Credit Line, unless you properly designate otherwise on a payment coupon we provide you, then each additional payment we receive will be first applied to the Credit Line until paid in full. Also, unless you properly designate otherwise on a payment coupon we provide you, if there is no Credit Line to which to apply an additional principal payment, then the additional principal payment will be applied to the Lock first opened until paid in full. Additional principal payments for a Lock may be made at any time but will not affect your obligation to pay future Lock payments as long as any amount is still owing on the Lock unless we otherwise agree in writing.
d)    Rate Determination.    We offer Locks at competitive rates. When you request a Lock, we will review the rates and terms available for a comparable Home Equity Loan offered by us at the time of your request based upon a like loan to value ratio, loan term and your credit profile. We will offer you that rate unless it would be higher than the rate calculated in accordance with the formula below, in which case you would get the rate calculated in accordance with that formula. Our standard rates are generally significantly lower than rates arrived at through the following calculation: We will start with the "Lock Index," which is the yield on U.S. Treasury securities having a comparable period of maturity to the scheduled maturity of the requested Lock as of the 15th day of the month immediately preceding the month in which you request your Lock as made available by the Federal Reserve Board. If the Lock Index becomes unavailable during the term of this Agreement, we may designate a substitute index after notice to you. We will then add 10 percentage points to the Lock Index. Your fixed lock rate (the "Fixed Lock Rate") will be the lowest of the following: the amount arrived at from the foregoing calculation, 21%, or the maximum rate we are allowed to charge you at the time of your lock under federal law, which for the purposes of 12 U.S.C. Section 85 incorporates Ohio law. As stated above, if our standard rate is lower than the Fixed Lock Rate, you will get the lower rate. We will provide a complete disclosure of the terms of the Lock at the time the Lock is established.
e)    Cancellation of Lock. If you later request that we cancel a Lock, we may permit you to do so if you agree to pay the Lock cancellation fee that is in effect at the time of cancellation for each Lock you cancel. You will be required to sign an amendment to this Agreement which will contain the amount of the agreed upon cancellation fee.
f)    Fee Waivers. If you Lock an initial advance of at least $25,000 immediately upon opening this Credit Account, we will waive the Annual Fee described in Section 15 for as long as that initial Lock remains open.

10.    PAYMENTS.
All payments on your Credit Account made by check or money order must be delivered to us at the address indicated on your billing statement. Any payment may be returned without applying it to your Credit Account if the check or money order is: (1) not drawn on the U. S. Postal Service or a financial institution located in the United States of America; (2) not payable in U.S. Dollars; (3) drawn with different numeric and written amounts; (4). missing a signature; (5) postdated; or (6) unacceptable for any other reason. We may apply all payments and credits in accordance with our standard operating procedures and with the requirements of applicable law. Unless otherwise required by applicable law, we may apply your payments to principal, interest, fees and other charges in any order.

If we receive payments at locations other than indicated on your billing statement, such payments will be credited promptly to your Credit Account, but crediting may be delayed for up to 5 days after receipt.

We may apply our standard operational procedures to verify that we have received good funds after we receive your payments before releasing the payment amounts as available credit on your Credit Account.

We do not process payments on Saturdays, Sundays or bank holidays, and if the Payment Due Date falls on one of these days, you will incur an additional Finance Charge if your payment is not posted on or before the preceding bank business day. We can accept late payments, partial payments, checks or money orders marked "paid in full" or containing similar language without losing any of our rights under this Agreement. You agree to pay us $25 for each payment check or automatic debit to your account which is returned unpaid. You also agree to pay a fee of $0.00 per copy for providing photocopies of monthly statements or canceled Draw Checks.

## 11.  SECURITY INTEREST.

As a part of this transaction, you are granting us a Mortgage on the property, as further described in the Mortgage, which is located at

**4920 SW 122 AVENUE, MIAMI, FL 33175-5502**

(the"Property"). All of the terms and conditions of the Mortgage are very important and should be read in conjunction with this Agreement.

## 12.  CLOSING COSTS.

Your closing costs are listed below. You may pay these costs in cash at the closing or charge them to your Credit Account as Advances.

| | |
|---|---|
| Loan Origination Fee **(FINANCE CHARGE)** | 0.00 |
| Loan Discount **(FINANCE CHARGE)** | 0.00 |
| Appraisal Fee | 0.00 |
| Credit Report Fee | 0.00 |
| Mortgage Broker Fee **(FINANCE CHARGE)** | 2,595.00 |
| Attorney Review - Trust Documents **(FINANCE CHARGE)** | 0.00 |
| Flood Zone Certification Fee **(FINANCE CHARGE)** | 0.00 |
| Underwriting Fee **(FINANCE CHARGE)** | 0.00 |
| Processing Fee **(FINANCE CHARGE)** | 0.00 |
| Document Preparation Fee - Lender **(FINANCE CHARGE)** | 0.00 |
| Courier Fee - Lender **(FINANCE CHARGE)** | 0.00 |
| Courier Fee - Broker **(FINANCE CHARGE)** | 0.00 |
| Wire Fee - Lender **(FINANCE CHARGE)** | 0.00 |
| Wire Fee - Broker **(FINANCE CHARGE)** | 0.00 |
| Condo Review Fee **(FINANCE CHARGE)** | 0.00 |
| Other Fee | 0.00 |
| Other Fee | 0.00 |
| Other Fee **(FINANCE CHARGE)** | 47.50 |
| Other Fee - Broker | 0.00 |
| Other Fee - Broker | 0.00 |
| Settlement or Closing Fee **(FINANCE CHARGE)** | 165.00 |
| Abstract or Title Search | 125.00 |
| Document Preparation Fee - Settlement Agent | 0.00 |
| Notary Fee | 115.00 |
| Closing Attorney Fee **(FINANCE CHARGE)** | 0.00 |
| Bank Closing Attorney | 0.00 |
| Title Insurance | 0.00 |
| UCC Preparation Fee | 0.00 |
| Attorney's Fees to **(FINANCE CHARGE)** | 0.00 |
| Recording/Filing Fees | 78.00 |
| City/County Tax/Stamps (Mortgage Tax) | 0.00 |
| State Tax/Stamps (Mortgage Tax) | 825.00 |
| Co-op Lien Search | 0.00 |
| Georgia Per Loan Fee | 0.00 |
| Survey Fee | 0.00 |
| Survey Inspection Fee | 0.00 |
| Lender's Insurance against loan defaults to Willis of New York, Inc.$17.00 POC | |
| Pest Inspection Fee | 0.00 |
| Mortgage Satisfaction Fee | 0.00 |

| | |
|---|---|
| Total of Closing Cost | 3,950.50 |
| Minus Closing Cost Paid by us | 1,355.50 |
| Total of Closing Costs due from you | 2,595.00 |

**CONDITIONAL WAIVER OF MORTGAGE TAX.** The term "Mortgage Tax" means the borrower's portion of any tax paid to a state, county or other government office as a condition to record the Mortgage. You acknowledge that you had the option to pay the Mortgage Tax disclosed above at closing, and you elected to have us pay the Mortgage Tax. We agree to conditionally waive the Mortgage Tax unless you close or terminate your Credit Account within three years from the date of this Agreement. If you close or terminate your Credit Account within 18 months from the date of this Agreement, you will repay to us 100% of the Mortgage Tax. If you close or terminate your Credit Account after 18 months from the date of this Agreement but within three years from the date of this Agreement, you will repay to us 50% of the Mortgage Tax. You will not be required to repay any portion of the Mortgage Tax if we suspend or terminate your Credit Account. You may prepay your Credit Account without repaying any portion of the Mortgage Tax as long as you do not close or terminate your Credit Account. The Fee to Close Account described in Section 16 is in addition to any amount you must repay under this paragraph.

At any time we may obtain an appraisal on the Property, including an internal inspection, at our sole option and expense. You agree that you will cooperate with us in obtaining such an appraisal. The cost of the follow-up appraisal and other permitted third party charges will be treated as Advances under this Agreement, as allowed by applicable law.

13.    RELEASE.
We will release the Mortgage when all amounts due under the Mortgage and this Agreement have been paid. When we discharge or release the Mortgage or any other documents recorded or filed to perfect our security interest in the Property, you shall pay any recordation or filing costs. Recordation or filing costs are estimated to be $ 25.00  .

14.    LATE FEES.
If you do not make the full current Minimum Payment within 10 days after the date it is due a late fee of $25.00 will be charged.

15.    ANNUAL FEE.
You agree to pay us a non-refundable Annual Fee of $ 50.00 during the Draw Period and any extension of the Draw Period. Unless you terminate your Credit Account and pay the outstanding balance, the Annual Fee will be charged to your Credit Account annually during the Draw Period in the Monthly Statement Period ending in your anniversary month which we assign to your Credit Account.  .

16.    FEE TO CLOSE ACCOUNT.
Your Credit Account may be charged the lesser of  1  % of your Credit Limit or $400.00  if you close or terminate your Credit Account within three years from the date of this Agreement. You will not be charged this fee if we suspend or terminate your Credit Account. You may prepay your Credit Account without paying this fee as long as you do not close or terminate your Credit Account.

17.    ACCOUNT RETURN DRAW CHECK CHARGE.
We may charge you a fee of $25.00 for the return of a Draw Check because you are delinquent or in default in any respect concerning the Credit Account.

18.    DEFAULT.
You will be in default if:
- a)    You engage in fraud or material misrepresentation at any time in connection with your Credit Account.
- b)    You fail to meet the repayment terms of this Agreement.
- c)    Your action or inaction adversely affects the Property or our rights in it. Examples of these actions and inactions include, but are not limited to circumstances in which:
  - 1.    You are the sole borrower on this Credit Account and you die.
  - 2.    The Property is used for an illegal purpose.
  - 3.    You transfer or attempt to transfer all or part of your interest in the Property without our written consent.
  - 4.    All or part of the Property is taken by condemnation or eminent domain.
  - 5.    You are in default on any mortgage or lien on the Property.
  - 6.    You fail to keep the Property properly insured.
  - 7.    You fail to pay real property taxes and assessments on the Property when they are due.
  - 8.    You fail to keep the Property properly maintained and in good repair.

If you default, we have the right, at our option, to cancel your credit privileges, to require the immediate payment of the entire amount owed to us, and/or to cause your home to be sold at foreclosure sale. If we refer your account to an attorney for collection or foreclosure, you agree to pay our reasonable attorney's fees as permitted by applicable law, but not to exceed 20 % of the amount owed, plus court costs and the costs related to foreclosure.

19.    CANCELLATION OF CREDIT PRIVILEGES.
We can refuse to make additional extensions of credit, or reduce your Credit Limit if:
- a.)    The value of the Property declines significantly below its original appraised value for purposes of this Credit Account.
- b.)    We reasonably believe you will not be able to meet the repayment requirements set forth in this Agreement due to a material change in your financial circumstances.
- c.)    You fail to meet any material obligation you have under this Agreement.
- d.)    You are in default under Section 18 above.
- e.)    Government action prevents us from imposing the **ANNUAL PERCENTAGE RATE** provided for in this Agreement.
- f.)    Government action impairs our security interest such that the value of our interest is less than 120 percent of your Credit Limit.
- g.)    A regulatory agency which supervises us has notified us that continued Advances would constitute an unsafe and unsound practice.
- h.)    You become the subject of a proceeding in bankruptcy.
- i.)    There is more than one borrower on this Credit Account, one of you dies, and that adversely affects our interest in the Property.
- j.)    The maximum **ANNUAL PERCENTAGE RATE** (or rate cap) is reached.

If we refuse to make additional Advances or reduce your Credit Limit under this provision, we may refuse to honor any requests for Advances, including those requests made before but presented to us after we made our decision. We will send you a written notice stating the reason for our action. If for any reason you believe your Credit Limit should be reinstated, you must send us a written request for reinstatement and include in the request the reasons why you believe your credit privilege or Credit Limit should be reinstated.

20.    FORECLOSURE.
The Mortgage signed in connection with this Agreement gives us certain rights to your property. The law gives us other rights you also agree to give us. If you default, we may foreclose on the Mortgage. This means that the real property covered by the Mortgage will be sold in order to pay the amount owed to us under this Agreement.
FLEAVLS                                                         Page 5 of 9

21.    PERIODIC REVIEWS AND INFORMATION.

We will conduct periodic reviews of your Credit Account based on financial and credit information we receive about you. You agree to provide us with updated financial information, in writing, if we request it. We may request a new credit report on you without telling you. If you ask, we will tell you the name and address of the consumer reporting agency that furnished it. We may furnish information about your performance under this Agreement to our affiliates and other persons as allowed by law.

You also agree to sign any additional or corrective documents in connection with this Agreement, at our request and as allowed by law.

22.    ASSUMPTION.

Someone buying your Property may not assume this loan on these terms.

23.    SENDING OF NOTICES.

Any statement or notice to you under this Agreement will be sufficiently given if sent to your address on file in connection with this account or to a new address of which you have notified us in writing at least 20 days before the sending of the statement or notice.

24.    SUPPLEMENT REGARDING CHARGES TO YOUR CREDIT ACCOUNT.

If you do not pay the fees and charges for which you are obligated or that we may charge under the terms of this Agreement at the time you are required to pay them, we have the right, but not the obligation, to charge your Credit Limit for those past due fees and charges to the extent permitted by the law governing this transaction. Any amount so charged to your Credit Limit will be a credit advance, bear interest at the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** until paid, and will decrease the funds available, if any, under the Credit Limit.

25.    AMENDMENT.

We may change the terms of this Agreement in accordance with the requirements of applicable law.

26.    DELAY IN ENFORCEMENT.

We may waive or delay enforcing our rights under this Agreement without losing them or relieving you of any of your obligations. We may waive or delay enforcing a right as to one of you without waiving it as to the others. We may release any security or any one of you from responsibility under this Agreement without releasing the others. We need not give anyone notice of our waiver, delay or release. We may sue any one of you without suing the others.

27.    OTHER RULES REGARDING ACCESS DEVICES.

You may not use Draw Checks or your Credit Card to make payments on your Credit Account. You agree that the Draw Checks, the Credit Card and the ATM Card we supply you with are our property and that you will return them to us at our request.

We are not responsible if anyone refuses to honor a Draw Check or Credit Card. We may honor postdated Draw Checks and are not responsible if we do so. We are not required to certify Draw Checks.

We will retain your cancelled Draw Checks, and will not return them with your billing statement. You agree that your cancelled Draw Checks will not be returned in your billing statement and that the original cancelled Draw Checks may be destroyed after a reasonable period of time as we may determine. You agree that by maintaining the original Draw Checks or a copy thereof on your behalf, we have otherwise made the Draw Checks available to you in a reasonable manner. You may request a copy of any cancelled Draw Check. If for any reason we cannot return a copy of your Draw Check or satisfy your needs through other means, you agree that we will not be liable for more than the face amount of the Draw Check.

You may ask us to "stop payment" on a Draw Check. If you do, you must tell us the name of the payee, the amount, date and number of the Draw Check, and who signed it. We are not bound by a stop payment order unless we have a reasonable opportunity to act on it and will not be liable for failing to stop payment if we used ordinary care. You agree to indemnify us and will pay all costs and expenses we incur (including reasonable attorney's fees) as a result of honoring your stop payment order. This indemnity will survive any termination of this Agreement. You agree to pay a fee of $ 15.00 for each request to "stop payment" on a Draw Check, as allowed by applicable law.

28.    LEGAL PURPOSES.

You may not use any Advances for purposes that violate any applicable federal, state or local laws or regulations.

29.    FUTURE SERVICES.

Your request for this Credit Account also serves as a request to receive any new services, including new access devices, that we might offer in the future in connection with this Credit Account. However, you may choose to decline such new services when we offer them. You agree that this Agreement will control transactions using any new services.

30.    APPLICABLE LAW.

Except to the extent that federal law shall be controlling, your rights, our rights, and the terms of this Agreement shall be governed by Ohio Law.

31.    CREDIT CARD ACCESS.

Notwithstanding anything contained in this Agreement to the contrary, credit card access may not be available in your state. If credit card access is permitted in your state and becomes available, we will so advise you and will issue a credit card to you upon your request. Any credit card issued in connection with the Credit Account is NOT

a debit card. The words "credit card" as used in this Agreement mean the VISA or MasterCard that may be issued to you as an access device to your Credit Account. VISA is a registered service mark of Visa, U.S.A., Inc. MasterCard is a registered service mark of MasterCard International Incorporated.

## 32.    FOREIGN TRANSACTIONS.

We will charge, and you will pay, in U.S. dollars for all foreign transactions at the exchange rate in effect at the time the transactions are entered to your Credit Account, including any special currency exchange charges.

## 33.    JOINT ACCOUNT.

On a joint account each of you may use the Credit Account, but the total unpaid balance may not exceed the Credit Limit. Each of you is individually responsible for payment of the entire balance regardless of who actually requested the Advance. Each of you has the right, upon proper written notice to us, to have the Credit Limit reduced or to suspend the privilege of obtaining new Advances. We have five business days after receipt of your request to take action on it. A request to suspend the privilege of obtaining Advances, even if made only by one ·of you, will be effective against all of you who are eligible to obtain Advances under this Agreement. In order to restore the Credit Account, we may require financial information from all of you and may refuse to restore the Credit Account if you no longer qualify under the criteria then in effect for new Credit Accounts. Any request for reinstatement would have to be made by all of you, despite the fact that only one of you may have requested the suspension of Advances. You agree to indemnify us and hold us harmless, and will pay all costs and expenses we incur (including reasonable attorney's fees) as result of honoring the request made by any one of you under this provision.

## 34.    TAX CONSEQUENCES.

You acknowledge that we have given you no assurance that the interest paid on your Credit Account is tax deductible. You are urged to consult your own tax advisor concerning the deductibility of interest and other costs charged in connection with this Credit Account. The Internal Revenue Service requires you to furnish to us, the interest recipient, your tax payer identification number ("TIN") in order to verify any deduction for mortgage interest. Your failure to provide us with your TIN may subject you to a $50 penalty imposed by the Internal Revenue Service.

# YOUR BILLING RIGHTS
## Keep this Notice For Future Use

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

Notify Us in Case of Errors or Questions About Your Bill. If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

-Your name and account number.
-The dollar amount of the suspected error.
-Describe the error and explain, if you can, why you believe there is an error.

If you need more information, describe the item you are not sure about.

Your Rights and Our Responsibilities After We Receive Your Written Notice. We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to the mistaken amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question on your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Special Rule for Credit Card Purchases

If you have a problem with the quality of the property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within in your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement of the property or services.

You agree to the terms and conditions contained in this Agreement and you acknowledge receipt of a completed copy of this Agreement and the informational and disclosure literature titled "Creditline Disclosure" and "When Your Home Is on the Line".

WITNESS:

_Jessica Jones_

Jessica Jones

ACCEPTED AND AGREED TO:

Borrower -
**RUBEN TORRES**

Borrower -

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, NA
By:
Patricia McClaskey Crutchfield/Assistant Vice President

Borrower -

Borrower -

Dated: _1-20-07_

Account No.:
Ref. No.:

FLCAVL6                     Page 9 of 9

CFN 2007R0117342
OR Bk 25332 Pgs 3122 - 3130i (9pgs)
RECORDED 02/02/2007 06:47:14
MTG DOC TAX 525.00
INTANG TAX 300.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Parcel #
30-4924-001-2241

Prepared
**BELINDA COOK**
250 West Huron Road, Cleveland, OH 44113
Record and Return Address:

National Closing Solutions

3925 Atherton Rd.

Rocklin, CA 95765

Attn: Recording Dept

**ACCOMODATION ONLY**

Reference
Servicing #

———Space above this line for recording data———

**FLORIDA**
**HOME EQUITY LINE OF CREDIT MORTGAGE**
(Securing Future Advances)

THIS MORTGAGE is given _____January 20, 2007_____ . The mortgagor is
_RUBEN RAFAEL TORRES and ANA MARGARITA TORRES, HIS WIFE and LEO TORRES_
_UNMARRIED_ _____ Torres /At _____

whose mailing address is
_4920  SW 122 AVENUE , MIAMI, FL 33175_

This Mortgage is given to _JPMorgan Chase Bank, N.A._
a national banking association whose address is
_1111 Polaris Parkway, Columbus, OH 43240_
or its successors or its assignees. Any communication to the Lender should be sent to
_C/O Chase Home Finance LLC, 250 West Huron Road, P. O. Box 93764, Cleveland, OH 44113._
In this Mortgage, the terms "you," "your" and "yours" refer to the mortgagor(s). The terms "we," "us" and
"our" refer to _JPMorgan Chase Bank, N.A._ .

Pursuant to a Home Equity Line of Credit Agreement dated the same date as this Mortgage
("Agreement"), you may incur maximum unpaid loan indebtedness (exclusive of interest thereon) in
amounts fluctuating from time to time up to the maximum principal sum outstanding at any time of
_One Hundred Fifty Thousand and 00/100_____ Dollars
(U.S. $ _150,000.00_____ ). The Agreement provides for a final scheduled installment due and payable not
later than on _February 6, 2037_____ . You agree that this Mortgage shall continue to secure all sums

FLLCMT (Rev. 09/14/04)                    Page 1 of 8

now or hereafter advanced under the terms of the Agreement including, without limitation, such sums that are advanced by us whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties hereto intend that this Mortgage shall secure unpaid balances, and all other amounts due to us hereunder and under the Agreement.

This Mortgage secures to us: (a) the repayment of the debt evidenced by the Agreement, with interest, and all refinancings, renewals, extensions and modifications of the Agreement; (b) the payment of all other sums, with interest, advanced under this Mortgage to protect the security of this Mortgage; and (c) the performance of your covenants and agreements under this Mortgage and the Agreement. For this purpose and in consideration of the debt, you do hereby mortgage, grant and convey to us and our successors and assigns the property located in _____ **DADE**_____

County, Florida, and more fully described in EXHIBIT A, which is attached hereto and made a part hereof, which property is more commonly known as

**4920 SW 122 AVENUE, MIAMI, FL 33175-5502**_____
("Property Address");

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

**YOU COVENANT** that you are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. You warrant and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

YOU AND WE covenant and agree as follows:

1.    **Payment of Principal, Interest and Other Charges.** You shall pay when due the principal of and interest owing under the Agreement and all other charges due hereunder and due under the Agreement.

2.    **Application of Payments.** Unless applicable law provides otherwise, all payments received by us under the Agreement and Section 1 shall be applied by us as provided in the Agreement.

3.    **Prior Mortgages; Charges; Liens.** You shall perform all of your obligations under any mortgage, deed of trust or other security instruments with a lien which has priority over this Mortgage, including your covenants to make payments when due. You shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. Upon our request, you shall promptly furnish to us all notices of amounts to be paid under this paragraph and receipts evidencing any such payments you make directly. You shall promptly discharge any lien (other than a lien disclosed to us in your application or in any title report we obtained) which has priority over this Mortgage.

FLLCMT                                    Page 2 of 8

We specifically reserve to ourself and our successors and assigns the unilateral right to require, upon notice, that you pay to us on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as we reasonably estimate initially and from time to time, as allowed by and in accordance with applicable law.

4.  **Hazard Insurance.** You shall keep the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which we require insurance. This insurance shall be maintained in the amounts and for the periods that we require. You may choose any insurer reasonably acceptable to us. Insurance policies and renewals shall be acceptable to us and shall include a standard mortgage clause. If we require, you shall promptly give us all receipts of paid premiums and renewal notices. If you fail to maintain coverage as required in this section, you authorize us to obtain such coverage as we in our sole discretion determine appropriate to protect our interest in the Property in accordance with the provisions in Section 6. You understand and agree that any coverage we purchase may cover only our interest in the Property and may not cover your interest in the Property or any personal property therein. You also understand and agree that the premium for any such insurance may be higher than the premium you would pay for such insurance. You shall promptly notify the insurer and us of any loss. We may make proof of loss if you do not promptly do so.

Insurance proceeds shall be applied to restore or repair the Property damaged, if restoration or repair is economically feasible and our security would not be lessened. Otherwise, insurance proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to you. If you abandon the Property, or do not answer within 30 days our notice to you that the insurer has offered to settle a claim, then we may collect and use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when notice is given. Any application of proceeds to principal shall not require us to extend or postpone the due date of monthly payments or change the amount of monthly payments. If we acquire the Property at a forced sale following your default, your right to any insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to us to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

You shall not permit any condition to exist on the Property which would, in any way, invalidate the insurance coverage on the Property.

5.  **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** You shall not destroy, damage or substantially change the Property, allow the Property to deteriorate, or commit waste. You shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in our good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage or our security interest. You may cure such a default, as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in our good faith determination, precludes forfeiture of your interest in the Property or other material impairment of the lien created by this Mortgage or our security interest. You shall also be in default if you, during the loan application process, gave materially false or inaccurate information or statements to us (or failed to provide us with any material information) in connection with the

FLLCMT                              Page 3 of 8

loan evidenced by the Agreement, including, but not limited to, representations concerning your occupancy of the Property as a principal residence. If this Mortgage is on a leasehold, you shall comply with the lease. If you acquire fee title to the Property, the leasehold and fee title shall not merge unless we agree to the merger in writing.

6. **Protection of Our Rights in the Property; Mortgage Insurance.** If you fail to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect our rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then we may do, and pay for, anything necessary to protect the Property's value and our rights in the Property. Our actions may include paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorney's fees, paying any sums which you are required to pay under this Mortgage and entering on the Property to make repairs. We do not have to take any action we are permitted to take under this paragraph. Any amounts we pay under this paragraph shall become additional debts you owe us and shall be secured by this Mortgage. These amounts shall bear interest from the disbursement date at the rate established under the Agreement and shall be payable, with interest, upon our request. If we required mortgage insurance as a condition of making the loan secured by this Mortgage, you shall pay the premiums for such insurance until such time as the requirement for the insurance terminates.

7. **Inspection.** We may enter and inspect the Property at any reasonable time and upon reasonable notice.

8. **Condemnation.** The proceeds of any award for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to us. If the Property is abandoned, or if, after notice by us to you that the condemnor offers to make an award or settle a claim for damages, you fail to respond to us within 30 days after the date the notice is given, we are authorized to collect and apply the proceeds, at our option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due. Unless we and you otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments payable under the Agreement and Section 1 or change the amount of such payments.

9. **You Are Not Released; Forbearance by Us Not a Waiver.** Extension of time for payment or modification of amortization of the sums secured by this Mortgage granted by us to any of your successors in interest shall not operate to release your liability or the liability of your successors in interest. We shall not be required to commence proceedings against any successor in interest, refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by you or your successors in interest. Our forbearance in exercising any right or remedy shall not waive or preclude the exercise of any right or remedy.

10. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Mortgage shall bind and benefit your successors and permitted assigns. Your covenants and agreements shall be joint and several. Anyone who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey such person's interest in the Property; (b) is not personally obligated to pay the Agreement, but is

FLLCMT                                                    Page 4 of 8

obligated to pay all other sums secured by this Mortgage; and (c) agrees that we and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without such person's consent.

11.    **Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you which exceed permitted limits will be refunded to you. We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

12.    **Notices.** Unless otherwise required by law, any notice to you provided for in this Mortgage shall be delivered or mailed by first class mail to the Property Address or any other address you designate by notice to us. Unless otherwise required by law, any notice to us shall be given by first class mail to our address stated above or any other address we designate by notice to you. Any notice provided for in this Mortgage shall be deemed to have been given to you or us when given as provided in this paragraph.

13. **Governing Law; Severability.** The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC ° 85 incorporates Ohio law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

14.    **Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred without our prior written consent, we may, at our option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by us if exercise is prohibited by federal law as of the date of this Mortgage.

15.    **Sale of Agreement; Change of Loan Servicer.** The Agreement or a partial interest in the Agreement (together with this Mortgage) may be sold one or more times without prior notice to you. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Agreement and this Mortgage. There also may be one or more changes of the Loan Servicer unrelated to the sale of the Agreement. If there is a change of the Loan Servicer, you will be given written notice of the change as required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any information required by applicable law.

16.    **Hazardous Substances.** You shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. You shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of Hazardous

FLLCMT                                    Page 6 of 8

Substances in quantities that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. You shall promptly give us written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which you have actual knowledge. If you learn or are notified by any government or regulatory authority, that any removal or other remediation

17. **Acceleration; Remedies.** You will be in default if (1) any payment required by the Agreement or this Mortgage is not made when it is due; (2) we discover that you have committed fraud or made a material misrepresentation in connection with the Agreement; or (3) you take any action or fail to take any action that adversely affects our security for the Agreement or any right we have in the Property. If a default occurs (other than under paragraph 14 hereof, unless applicable law provides otherwise), we will give you notice specifying: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to you, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform you of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense you may have to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, we, at our option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. We shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees as permitted by applicable law, but not to exceed 20% of the amount decreed for principal and interest (which fees shall be allowed and paid as part of the decree of judgment) and costs of documentary evidence, abstracts and title reports.

18. **Discontinuance of Enforcement.** Notwithstanding our acceleration of the sums secured by this Mortgage under the provisions of Section 17, we may, in our sole discretion and upon such conditions as we in our sole discretion determine, discontinue any proceedings begun to enforce the terms of this Mortgage.

19. **Release.** Upon your request and payment of all sums secured by this Mortgage, we shall release this Mortgage. You will be responsible for all costs of recording such release.

20. **Additional Charges.** You agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by us to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all sums secured thereby.

21. **Documentary Stamp Taxes and Intangible Taxes.** You agree to pay any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement. You shall indemnify and hold us harmless from and against any and all loss, liability,

FLLCMT                                    Page 6 of 8

*A+LT*

claim, deficiency or expense, including, without limitation, interest, penalties and legal fees, which we may have heretofore or hereafter incurred in connection with any and all present and future documentary stamp taxes and non-recurring intangible taxes with respect to this Mortgage and the Agreement.

22.    **Waiver.** No waiver by us at any time of any term, provision or covenant contained in this Mortgage or in the Agreement secured hereby shall be deemed to be or construed as a waiver of any other term, provision or covenant or of the same term, provision or covenant at any other time.

23.    **Riders to this Mortgage.** If one or more riders are executed by you and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were part of this Mortgage.

☐ Condominium Rider                 ☐ 1-4 Family Rider

☐ Planned Unit Development          ☐ Other(s) _____
   Rider

**IN WITNESS WHEREOF,** you have hereunto set your hand and seal the day and year first above                                                                      written.
Witnesses:                          Mortgagor(s):

_Octavio A. Rodriguez_                                              (Seal)
Octavio A. Rodriguez                Print
                                    **RUBEN RAFAEL TORRES**


_____                                    (Seal)
                                    Print
                                    **ANA MARGARITA TORES, HIS WIFE**
                                         Torres / At


_____                                    (Seal)
                                    Print
                                    **LEO  TORRES**
_____                                    (Seal)
                                    Print
FLLCMT                              Page 7 of 8

## ACKNOWLEDGMENTS

STATE OF FLORIDA, Miami-Dade County, ss:

The foregoing instrument was acknowledged before me, on this __20th__ day of __JANUARY__, __2007__ by __RUBEN RAFAEL TORRES, LEO TORRES__, who is personally known to me (yes/no) or who provided __Florida driver's licenses__ as identification.

> NOTARY PUBLIC-STATE OF FLORIDA
> Octavio A. Rodriguez
> Commission # DD379731
> Expires: DEC. 15, 2008
> Bonded Thru Atlantic Bonding Co., Inc.

_Octavio A. Rodriguez_

Print Name:
Notary Public _Octavio A. Rodriguez_

My Commission expires: __12-15-2008__

STATE OF FLORIDA, Miami-Dade County, ss:

The foregoing instrument was acknowledged before me, on this __20th__ day of __JANUARY__, __2007__ by __ANA MARGARITA TORRES__, who is personally known to me (yes/no) or who provided __Florida driver's license__ as identification.

> NOTARY PUBLIC-STATE OF FLORIDA
> Octavio A. Rodriguez
> Commission # DD379731
> Expires: DEC. 15, 2008
> Bonded Thru Atlantic Bonding Co., Inc.

_Octavio A. Rodriguez_

Print Name:
Notary Public _Octavio A. Rodriguez_

My Commission expires: __12-15-2008__

This instrument has been prepared by: _____, whose post office address is _____

FLLCMT                                    Page 8 of 8

OR BK 25332 PG 3130
LAST PAGE

Order No. ▮▮▮▮▮

### EXHIBIT "A"
### LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF FLORIDA, COUNTY OF MIAMI-DADE, CITY OF MIAMI, AND IS DESCRIBED AS FOLLOWS:

NORTH 165 FEET OF LOT 218, BIRD ROAD FARMSITES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 46, PAGE 3, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

PARCEL NUMBER(S): ▮▮▮▮▮▮▮

# EXHIBIT 🖉 C

AFFIDAVIT IN SUPPORT OF MFR

(TO BE PREPARED BY CHASE AFFIANT)

C

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE** _____ Southern _____ **DISTRICT OF** _____ Florida _____

_____ Miami _____ **DIVISION**

IN RE:                                               :
                                                     :
Ruben R Torres                                       :
                                                     :
                                                     :       **CASE NO.** _19-16899-RAM_
                                                     :
                                                     :       **CHAPTER** _07_
                                                     :
                                                     :
                                                     :
                                                     :
                                                     :
                                                     :
_____                          :
        **Debtor(s).**                               :

---

AFFIDAVIT OF JOHANNA OVERMOYER

IN SUPPORT OF MOTION BY

JPMORGAN CHASE BANK, N.A.

FOR RELIEF FROM THE AUTOMATIC STAY

STATE OF Ohio            )
                         ) ss
COUNTY OF Franklin       )

JOHANNA OVERMOYER _____, being first duly sworn on oath, deposes and states as follows:

1.      I am over the age of eighteen and am authorized to make this affidavit on behalf of JPMorgan Chase Bank National Association ("Chase").

2.      I am presently a Vice President for Chase. In this position, I have access to the business records of Chase and my responsibilities include ascertaining and verifying amounts due and payable as to delinquent bankruptcy accounts.

---

3.      The facts stated in this affidavit are based upon information that I obtained by reviewing records maintained in the ordinary course of Chase's business, as part of regularly conducted business activity, by or from information transmitted by person(s) with knowledge of the events described therein, at or near the time of the event described.

4.      Ruben Torres
executed a note dated      January 20, 2007      in favor of
JPMorgan Chase Bank, N.A.
in the original principal sum of $ 150,000.00                          (the "Note").

5.      Movant is in possession of the original promissory note.

6.      The Note is secured by a  Florida Home Equity Line of Credit Mortgage
encumbering certain real property commonly known as  4920 SW 122 Avenue
Miami, FL 33175-5502

7.      The Note, Security Instrument, and Supplemental Riders, Amendments, Modifications, and Assignments, if any, are attached hereto as Exhibit "A" and are true and correct copies of the originals, with certain sensitive personal identifiable information redacted from the document.

8.      The unpaid principal balance of this loan as of  06/13/19      is $ 133,587.11
together with accrued interest in the amount of  $ 3,532.77      , in addition to other fees, charges and/or costs in the amount of  $ 1,603.00      , for a combined total of  $ 138,722.88      .

9.      Interest continues to accrue at the rate of   6.250  % per year.

10.      The Debtor failed to make payments with respect to this loan for the months of
03/06/19      through  06/06/19      . The total arrearage              due as of
06/13/19      is:  $ 5,228.12      . Please note that additional payments will come due
after  06/13/19      .

11.     The sums set forth in this affidavit do not include any late charges, escrow advances, attorneys' fees, costs, or other fees and charges that might otherwise be included in the event that a payoff is requested or provided.

I declare that, to the best of my knowledge, and after reasonable inquiry, the foregoing is true and correct.

Further Affiant Sayeth Not.

BY: _____
   **AFFIANT**
Name: JOHANNA OVERMOYER
Title: Vice President
Company: JPMorgan Chase Bank, N.A.
Date: 6/26/2019

Subscribed and sworn to before me this

_26_ day of _June_ ,

20_19_, by: JOHANNA OVERMOYER .

_____, Notary Public

State of _____ **Ohio** _____          Tiffany L. Thompson

County of Franklin

My Commission expires: Oct 25, 2021

Personally Known ___X___ OR

Produced Identification _____ .

Type of Identification Produced:
_____ .

TIFFANY L. THOMPSON
NOTARY PUBLIC
FOR THE
STATE OF OHIO
My Commission Expires
October 25, 2021

Case No. 19-16899-RAM

## INDEBTEDNESS WORKSHEET
## DEBT AS OF THE PETITION DATE

**A.    Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date:  $138,722.88.**

1.   Amount of principal:  $133,587.11

2.   Amount of interest:  $3,532.77

3.   Amount of escrow (taxes and insurance):  $1,603.00

4.   Amount of forced place insurance expended by movant:  $0.00

5.   Amount of attorneys' fees billed to debtor(s) pre-petition: $0.00

6.   Amount of pre-petition late fees, if any, billed to debtor(s): $0.00

7.   Any additional pre-petition fees, charges or amounts charged to debtors/debtors account and not listed above:
       Pre-Petition Attorneys' Costs      $0.00

**B.    Contractual interest rate: 6.25%**



19-01013 JPC
V6.20190409

Case No. 19-16899-RAM

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
(as of June 13, 2019)

C.   Date last received payment was applied: February 6, 2019

D.   Alleged total number of payments due post petition from filing of petition through payment due on June 13, 2019:0

E.   All post-petition payments alleged to be in default:

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Amount Applied to Escrow | Late Fee Charged (if any) |
|---|---|---|---|---|---|---|
| 6/6/2019 | $1,304.69 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals: $ | $1,304.69 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

F.   Amount of movant's attorneys fees billed to debtor for the preparation, and filing and prosecution of this motion:  $0.00

G.   Amount of movant's filing fee for this motion: $0.00

H.   Other attorney's fees billed to debtor post-petition: $0.00

I.   Amount of movant's post-petition inspection fees: $0.00

J.   Amount of movant's post-petition appraisal broker's price opinion:  $0.00

K.   Amount of forced placed insurance or insurance provided by the movant post-petition:  $0.00

L.   Sum held in suspense by movant in connection with this contract, if applicable: $0.00

M.   Amount of other post-petition advances or charges, for example taxes, insurance incurred by debtor etc (itemize each charge): $0.00



Property Search Application - Miami-Dade County

Page 1 of 1

OFFICE OF THE PROPERTY APPRAISER

## Summary Report

Generated On : 6/17/2019

### Property Information

| | |
|---|---|
| Folio: | 30-4924-001-2241 |
| Property Address: | 4920 SW 122 AVE<br>Miami, FL  33175-5502 |
| Owner | LEO TORRES &<br>RUBEN RAFAEL TORRES &W<br>MARGARITA |
| Mailing Address | 4920 SW 122 AVE<br>MIAMI, FL 33175-5502 |
| PA Primary Zone | 9000 AGRICULTURE |
| Primary Land Use | 0101 RESIDENTIAL - SINGLE<br>FAMILY : 1 UNIT |
| Beds / Baths / Half | 2 / 2 / 0 |
| Floors | 1 |
| Living Units | 1 |
| Actual Area | 3,780 Sq.Ft |
| Living Area | 2,928 Sq.Ft |
| Adjusted Area | 3,334 Sq.Ft |
| Lot Size | 53,143.2 Sq.Ft |
| Year Built | Multiple (See Building Info.) |



2016 Aerial Photography    200ft

### Assessment Information

| Year | 2018 | 2017 | 2016 |
|---|---|---|---|
| Land Value | $500,200 | $427,000 | $360,000 |
| Building Value | $108,740 | $109,616 | $110,492 |
| XF Value | $21,283 | $21,492 | $21,701 |
| Market Value | $630,223 | $558,108 | $498,193 |
| Assessed Value | $530,944 | $482,677 | $438,798 |

### Taxable Value Information

| | 2018 | 2017 | 2016 |
|---|---|---|---|
| **County** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $530,944 | $482,677 | $438,798 |
| **School Board** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $630,223 | $558,108 | $498,193 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $0 | $0 | $0 |
| **Regional** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $530,944 | $482,677 | $438,798 |

### Benefits Information

| Benefit | Type | 2018 | 2017 | 2016 |
|---|---|---|---|---|
| Non-Homestead<br>Cap | Assessment<br>Reduction | $99,279 | $75,431 | $59,395 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

### Sales Information

| Previous Sale | Price | OR Book-Page | Qualification Description |
|---|---|---|---|
| 04/01/2003 | $500,000 | 21206-4458 | Sales which are qualified |

### Short Legal Description

| |
|---|
| 24 54 39 1.22 AC |
| BIRD ROAD FARMSITES PB 46-3 |
| N165FT OF TRACT 218 |
| PR ADD 4920 SW 122 AVE |
| LOT SIZE IRREGULAR |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA – MIAMI DIVISION**

**CASE NO. 19-16899-RAM**
**CHAPTER 7**

**IN RE:**

**RUBEN R TORRES,**
       **Debtor(s)**
_____/

**PROPOSED ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC**
**STAY IN FAVOR OF JPMORGAN CHASE BANK, NATIONAL ASSOCIATION**

**THIS CASE** came before the Court upon the *Motion for Relief from the Automatic Stay* (Docket No. ) filed by JPMorgan Chase Bank, National Association, its Successors and/or Assigns ("Secured Creditor") on negative notice, pursuant to Local Rule 4001-1(C). Based on the record, there being no objection to the entry of this Order and the Secured Creditor by submitting this form of order having represented that the motion was served on all parties required by Local Rule 4001-1, that the 14 day response time provided by that rule has expired, that no one has filed, or served on the Secured Creditor, a response to the motion, and that the form of the order was attached as an exhibit to the motion and the Court being otherwise fully advised on the matter, it is,



19-010I3 JPC
V6.20190409

**ORDERED:**

1.    Secured Creditor's Motion for Relief from the Automatic Stay is GRANTED.

2.    The automatic stay imposed by 11 U.S.C. § 362 is lifted with respect to real property located at 4920 SW 122 Ave, Miami, Florida 33175, and legally described as:

**THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF FLORIDA, COUNTY OF MIAMI-DADE, CITY OF MIAMI, AND IS DESCRIBED AS FOLLOWS:**

**NORTH 165 FEET OF LOT 218, BIRD ROAD FARMSITES, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 46, PAGE 3, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.**

3.    This Order lifting the automatic stay is entered for the sole purpose of allowing Secured Creditor to pursue its lawful *in rem* remedies as to the property described above and said Secured Creditor shall neither seek nor obtain an *in personam* judgment against the Debtor.

4.    The Court waives the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001 (a)(3) so that Secured Creditor may pursue its *in rem* remedies without further delay.

5.    The automatic stay is terminated to allow Secured Creditor to send to any party or parties protected by the automatic stay any and all notices required by applicable state and/or federal law or regulation; and to allow Secured Creditor to take such actions with respect to the Property as are provided for under applicable nonbankruptcy law, including but not limited to, informing Debtor(s) of any loan modification, short sale, or other loss mitigation options.

### ###

**Submitted by:**

Taji Foreman, Esquire
Attorney for Secured Creditor
8201 Peters Road, Suite 3000
Plantation, Florida 33324
Telephone:  (954) 356-1672
Telefacsimile: (954) 382-5380

*Taji Foreman, Esquire is directed to serve copies of this order on the parties listed below and to file the certificate of service of order.*

19-01013 JPC
V6 20190409

**Copies furnished to:**

Ruben R Torres
12040 SW 51 St
Miami, Florida 33175

Michael A. Frank, Esq.
Attorney for Debtor(s)
10 NW LeJeune Rd #620
Miami, FL 33126

Joel Tabas, Trustee
25 SE 2nd Avenue
Suite 248
Miami, FL 33131

*U.S. Trustee*
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL  33130